Thank you. Thank you, Christina. Our next case on calendar is a state versus Rex Vance Wilson versus Las Vegas Metropolitan Police Department 21-16760. Each side will have 15 minutes. Good morning. Good morning. I reserve three minutes of my time for rebuttal. May it please the court, my name is Mario Gonzalez and I represent the appellants. This is an appeal from a summary judgment adjudication and dismissal of appellants' state court claims. First of all, I'd like to talk about the deceased Rex Wilson. Mr. Wilson and his wife and his nine children are Native Americans from South Dakota. They are all enrolled members of a federally recognized tribe. Rex was a United States Marine who served his country for five years during the Persian Gulf War and was honorably discharged from the Marine Corps. He moved his family to Henderson, Nevada in 1995 and they have resided there up to the present time. Counsel, if I may point you to the issue that to me I would like to hear your comments on. The district court said that in the particular circumstances here, there had to be expert testimony concerning the standard of care because an average jury wouldn't know what a pit maneuver is or how it's different from other uses of a vehicle to stop someone or stop their car and when that's appropriate. Why is that incorrect under Nevada law? Well, first of all, when you do Fourth Amendment claims, the right to life, the standards are a little stricter and the case was dismissed on qualified immunity grounds for that reason, but we're here on state claims and on state claims you use the reasonableness in tort law and in tort law it's a little different because the reasonable standard doesn't require an expert, especially in this case. The court should have allowed the case to go to a jury. A jury could very well find that the circumstances that existed at that point in time when he was surrounded by police, they could have determined the two issues the district court ruled on and one was a shooting, which I think is an issue here, and the second is a... Counsel, I'm confused about that. I thought the only issue on appeal has to do with, I don't know how to pronounce his name, Officer Squale and his use of the vehicle. I thought that the shooting was, the ruling on that was not appealed. Am I incorrect about that? Well, we appeal the state claims, but opposing counsels ask that all the orders be reviewed by this court and under the Voss case, the Voss case states that if the opposing counsel raises an issue, in this case he's saying he wants all the issues reviewed on appeal, then any... There's no cross appeal here that I'm aware of. Am I wrong about that? There's what? Is there a cross appeal filed here? No. Okay. No. Okay. So basically, the Fourth Amendment claim, we believe, can still be resolved based on opposing counsel's request that the court review all the orders. And so that constitutes... Where is that request? I don't really understand. I thought I had the same impression that Judge Graber has, that we were only looking at the vehicle use and whether expert testimony was needed for it. No. We're looking at also the shooting. I think we raised that in our briefs, as well as the ramming. Those are two issues on the state claims. But where in your brief did you argue anything about anything other than this expert testimony issue about the vehicle in your opening brief? I didn't get your question, Your Honor. In your opening brief, did you make any arguments about anything other than the vehicle use and the expert testimony? No. We raised the shooting issue in our briefs. What page of the opening brief are we to find that argument? On the shooting? Yes. I'm pretty sure we raised that also in our reply brief. Well, that's too late under our case law. Is there anything in the opening brief that argues that the qualified immunity issue on the shooting was incorrectly decided? Yeah. Now, under the Voss case, qualified immunity doesn't apply to state cases. I think it's very clear the court said that. Where in your opening brief do you argue about the shooting as opposed to the vehicle? In our opening brief, we pointed out that under these circumstances, what happened was when the police car surrounded the vehicle, which is a whole different circumstances, that Officer Gowans told Officer Cusquillo, ram him, ram him, and then they got out and they started shooting. And then they tried to justify the shooting. Well, he's pointing a gun at us, see? So they raised the issue of the shooting, and we responded to it in our briefs. Okay. Well, let's focus, if we could, on the expert issue. So I think you're arguing that a tort doesn't need an expert, but that can't be true always. You're correct. We're arguing that in these circumstances, it doesn't need an expert, that this is governed basically by tort law, and the reasonable standard is a lot different than a Fourth Amendment claim under 1983 action. So under tort law, the reasonable standard is not as stringent as it is on a Fourth Amendment claim, and therefore, in this particular instance, the jury could reasonably find that the ramming was not reasonable, as well as the shooting was not reasonable. So there's an argument here about whether it was a ram or a pinch. I mean, how is the jury supposed to know what these car use techniques are that police use? Well, there was a pit, and a pit could be deadly force also. Do you think that an average juror knows what a pit is or knows what a block and a pinch is? Those are defined in our briefs, and it's taken right out of the manuals. Right, but the question is whether an average layperson knows what those things are. I mean, I must say that this is perhaps not directly relevant, but I have to say that before this case, I'd never heard of a pit maneuver or a pinch and a block. This is just not ordinary language or ordinary things, it seems to me. Well, the ram, when it's used in a Fourth Amendment context, maybe would require an expert. But when it's used in the context of this particular case, in this scenario, where the car's already stopped, surrounded by police, there was a pit that knocked the car into the medium of the interstate. But then what happened? Mr. Golancz told Mr. Skew to ram the car. But now, you know what Mr. Skew is saying? He never rammed the car, he just blocked it. And that's the excuse they're using now. And if you're blocking a car, that doesn't take an expert to determine whether you blocked that car properly. Counsel, is there any case in Nevada that requires expert testimony in a police excessive force case? The Voss case, I think, is important precedent, and I notified the court of that case. And in the Voss case, basically, what this court said was that the chase, high-speed chase, those issues were not pertinent once the individual went into the store. And it's a whole new scenario. And then you judge the reasonableness by that particular scenario. And in that scenario, this person was wanting to tell the police, kill me, kill me. And it had, apparently, scissors cut somebody's hand, and he was shot. But the court basically said that based on court law, the reasonable standard under court law, a jury could still find out whether that was reasonable under that scenario. And I think the same thing could be said here, that we have a whole different scenario. The chase was, you know, a crime. The stealing of the vehicle was a crime. But we're looking at the scenario where once the police surrounded Mr. Wilson, there was Officer Schultz on the driver's passenger side. Lindbergh was right in front of him. And Scuglio and Gowans was on the left side. So, Counsel, so the answer to my question of is there any case in Nevada holding that expert testimony is needed in a police excessive force case, the answer is no. No, not when you're using the reasonable standard under court law. But I also want to mention that there appears to be, once Mr. Gowans, Mr. Scuglio, either rammed or blocked the car, doesn't matter what they did, it's still unreasonable under the reasonable standard of negligence court law. And so I did, one of the main documents they're using to justify their action is that handout, a visual aid I handed out. And that was submitted on the left there, that photograph. It's in the record. And I couldn't make out what that is all about. I couldn't make out anybody holding a gun, as they say. It's just not there. And if Counsel, opposing Counsel can point out the gun, I'd like to see that. But what I did find out is that there was a report from the Clark County District Attorney's Office that showed the same picture, but a little clearer version of it. And all I see is the face of Rex Wilson. Now, Rex Wilson's looking at Lindbergh. So does this relate to the shooting? Yeah, that's what they're basing it on. Is that why you're offering it on? The whole Wilster case is based on that photograph. That Scuglio and Gowans said that Mr. Wilson was pointing a gun at them. And he's sitting in his driver's seat of his car, and they were to the left. And they're basing it on that photo taken by Officer Lindbergh. And if you look at this face here, he's looking at Lindbergh, not at Scuglio and Gowans. If he was looking at Scuglio and Gowans pointing a gun, they admit in the record that he's right-handed, he would have turned this way and been looking this way, not straight ahead at Officer Lindbergh. You're almost out of time. Do you want to save any time for a rebuttal? Yes, I do. Okay, you might want to rest now then and let's hear from the other side, and you could have some time for a rebuttal.  Good morning, Your Honors. Craig Anderson on behalf of the defendants, primarily. A little taller, so you might need to move the microphone up. Well, that's the first time anyone's ever said that to me, so I'll take that. I've already won today. Thank you. May it please the Court, Craig Anderson on behalf of, I think it's primarily, Officer Scuglio and the Las Vegas Metropolitan Police Department. How do you pronounce his name? Scuglio. Squeal? Scuglio. Squeal. Yes, Scuglio. What would you like me to address with respect to what you just heard? Well, first I'd like you to address whether, in your view, the opening brief raises the issue of the justification for the shooting as distinct from the vehicle issue. Correct. Yes, it does. When we filed our initial motion for summary judgment, which is why we included the entire briefs in the supplemental excerpts of record, we filed a summary judgment motion because the case had always been litigated on the shooting. There was no mentions of ramming, blocking when we did discovery and when we filed the initial motion. When we filed our initial motion, they opposed it, and they did not oppose the shooting. Their opposition to the district court was strictly on the use of the vehicles. That's why the district court, in the first order, granted summary judgment on the 1983 and the shooting claims and said, okay, I need more briefing on this new claim that's being risen with the vehicles. In the opening brief on the appellate level, they did not raise anything about the shooting. It is strictly on page 9 of their brief, it brings up the issue, and the issue is strictly as to whether the ramming was reasonable under the circumstances. So our understanding in our briefing is whether the Nevada state law negligence claim was properly disposed of by the district court. And there's nothing even arguing the shooting in any of the opening brief, answering brief, or reply brief, so I would agree with you on that. So the issue as I see it is whether the district court correctly granted summary judgment on the state law negligence claim by finding that expert testimony was required in this case. And with respect to that, there is no rule that expert testimony is always required or is never required. The issue is whether the facts presented to the court require some sort of esoteric knowledge or words of art. What is the Nevada authority that is most relevant here? There's not a lot of Nevada authority. It would be the Mann case, Daniel Mann case, which stated that the exact terminology was that expert testimony is required when the information being sought is outside the knowledge of a lay person, requires some esoteric knowledge or something that you need to the case. Well, is there any case involving use of a police vehicle? Not in Nevada. Most of the Nevada cases end up in Federal court, and there's none in Federal court either interpreting Nevada law, so this would be the first one. What is the law outside of Nevada that would be? So the law outside of Nevada is very consistent that sometimes it is required, sometimes it is not, based upon the facts of the case. This case, although it involves a police chase, the issue we're looking at is not a police chase. The issue we're looking at is how vehicles can be used to effectuate a seizure.  can be used to effectuate a seizure. Is there a risk for police to drive at 100 miles an hour? Yes. That's something a lay person could easily tell, especially if the person, the suspect, is not driving recklessly and then the police instigate that type of reckless driving. Here, what we're looking at is once the chase, it wasn't over, but once the suspect was somewhat in a precarious position of being cornered, whether they used their vehicles appropriately in attempting to prevent further forfeiture. You think that a lay person wouldn't understand what a ramming was? Well, I learned a lot in this case, too, because a ramming is a use of force that is not intended to stop the vehicle. It is intended to stop the driver. It's like shooting the driver. You are ramming someone to cause substantial bodily harm or death, or you know that's a likely cause. So an example of a ram is if a suspect is driving at 100 miles an hour towards a school zone with kids out playing and there's no way to stop him except driving your vehicle as fast as you can into him to stop him. The pit maneuver is designed to stop the car, not the driver. It's designed to do that. Blocking and pinching are designed to prevent escape. Right. Did the police, I haven't read the entire transcript here, or the record, but did the police explain what that was? Absolutely. Officer Squeal explained it, excerpts of the record, roughly 186 to 187, and he describes why, on excerpts of the record 185, why he performed a block. The official police report defined this as a pinching. That's on excerpts of the record 484. So the investigator said that the use of the vehicle was a pinching, which is a low-level use of force. Officer Squeal said what I did was a block, which is also a low level of force. And so there is no evidence or anything in this record that indicates that this use of the vehicle was a deadly force ram. Except that they said ram him, right? Yes. So what do we do about that? Okay, so as they're approaching his passenger, Gallin says, ram him, ram him. Now, if you listen to four seconds before that, he is instructed over his radio to block him. So you hear on the radio, block him, block him. And then Gallin says, ram him, ram him. Well, the mere fact that he said ram does not automatically mean that Squeal performed a ram. And to me, when you watch the video, you just can't say it's a ram. It's a... It's hard to say what it is, isn't it? Yeah. Well, the jury... So the jury would have heard the testimony of the police concerning what they were doing, and they would have seen the video. Correct. And the summary judgment was granted because there was not expert testimony by the plaintiff. On the standard of care. On the standard of care. That's reasonable. Yeah. And there's no law anywhere that I can find that says that in these kinds of cases, you need expert testimony on the standard of care. The law seems to be quite general as to whether or not it's within the jury's understanding. Yeah. And so what it seems like in their opening brief, and you can read it on page 9, is they're saying it was unreasonable to use a ram because lesser force could have achieved this result with a pinch or a block. I believe in watching the video, no reasonable jury could think this was a ram. You cannot watch the impact and think, well, that's likely to cause death or substantial bodily harm. Is that why the district court granted summary judgment? Well, I think the district court was as confused as we are. How do you explain to a jury, this is a ram, this is a block? And if perhaps they had done a Rule 30b-6 witness step or you had a police officer say, yes, this was a ram, but they don't. Everyone says it's a block or a pinch. And the mere fact that Gallens does an excited utterance as they're approaching the car, ram him, ram him. Yeah. Yeah, I mean, that's kind of using a term of art when you're in this heated situation. And I don't think he's thinking about the policy like that. What word should I use here to make sure that we don't have future liability? But I think when you watch the video, it's no one can say that that use of the vehicle was likely to cause substantially bodily harm or death. And that leads us to another issue that the district. Could I just pause you there? So this is sort of a different form of the argument, I think. So one argument would be whenever you have a case with a pinch, pit, ram, block, you need an expert. But it seems like maybe what you just said is a slightly different thing, that when all the officers were saying this was just a block, they basically had no evidence on the other side saying otherwise. And so the only kind of evidence they could have had on the other side was an expert. That's sort of a different argument than like the jury can't understand this without an expert. Yeah. And I would make both. I do, because even looking at this case myself, you know, I've done several police car chase cases. To learn the intricacies of each of these movements was new to me, to learn, you know, when a ram is allowable, when a pit is allowable. But, counsel, we've seen a lot of police car chase cases, too. And we've never, I've never, I personally have never seen one where it hinged on whether or not there was expert testimony, where you had videos and where you had the police officers able to testify. Most of the police car chases involve injuries to bystanders. You know, where the police are chasing someone and the car goes through a red light or some mechanism like that and causes injury to a third party. Here, you know, that's. I don't know that that's. Maybe. True. There's a sizable number that involved a person who was chased. And there was another, I found it interesting that the district court rested its decision on the expert issue. The reason being, as we're all well aware, negligence is duty breach causation damages. Our primary argument below was, okay, assuming this vehicle was wrong, you have a duty and you have a breach. They've never identified any damages or any causation of those damages that this use of the vehicle caused Mr. Wilson. And I thought that was the easier approach the district court could have taken, is they don't have any medical testimony. They can't even argue they have property damage because it was a stolen vehicle. So, I thought that was the easier route for the district court to dispose of this issue was to say there's no, there's absolutely zero evidence of damages or causation of those damages. And I believe this court can affirm on those grounds as well because it was raised, it is a de novo review. But they went with the expert and so that's what I'm here with. Right. Yeah. But I thought that was the easier path to take, was that they have never identified any damages from this use of the vehicle or any causation. And to give them the argument, the argument could be when we look at this broader range of negligence is did that use of the vehicle, was it foreseeable that would lead to a shooting? And I just think the answer to that is no. You would never foresee that if you block someone in their passenger side they're going to raise a gun-shaped object in your direction. Okay. And this is the gun-shaped object? Is that? Well, okay. So, the one on the left is the one. Which is the one with the circle? Yeah, the circle. So, that was the one that was in the record below. Okay. And it shows a dark object being pointed out the window. Now, if we were arguing the shooting, then we're getting into the Fourth Amendment jurisprudence, is all of the officers testified the same. The plaintiffs generated no evidence that they were wrong, that that occurred. And I understand that when the decedent is dead, plaintiffs can come in and witness testimony facts. In this case, that didn't happen. In fact, once that was shown to them at the summary judgment stage, they abandoned the claim. There was a hose wrapped in tape or something, though? Yes. A hose nozzle. So, there was something that looked like a gun in the car. Yeah, there was a gun-shaped object in the car. And, you know, these things happen very fast. But all three officers testified the same. They all had it pointed in the same direction of the same person. And they never attempted to contradict that in the lower court. They never said that's not an accurate picture. They never said that it wasn't in the car. In fact, they abandoned the shooting claims. And so, you know, to raise that now, I didn't have the opportunity to brief that. Any other issues you'd like me to address today? I don't think so. Thank you very much for your time. Thank you very much. We have a little bit of time left for rebuttal. Thank you, Your Honor. In regards to the photograph, if you look at that closely, there is no gun involved in that photograph. It's very blurry. I'm sorry. I know this was submitted so belatedly, I actually don't remember which side submitted it. Did you give us this picture? I'm the one that submitted that. But if you look at it closely, there's no gun in that photograph, in either photograph, the clear one or the other one. It just shows the face of Rex Wilson looking at Officer Lindbergh. If he was looking at pointing a gun at Officer Squeal, he would have been turned this way towards Squeal, but he wasn't. And secondly, there's a lot of inconsistencies in the testimony that he mentioned. The bullets that killed Rex Wilson mainly came from the left, from Squeal. He was shot in the temple and other parts of his body. So appellants also admit in their brief that Rex Wilson was right-handed. Could I ask you a question? So your opposing counsel suggested that we could affirm in this case based on the lack of evidence of any injury caused by the car hitting the other car. What is the evidence of damages from that? The death of Rex Wilson, his life had value. But didn't he die because of the shooting? He died from the shooting. That's right. So what is the damage from the car hitting the other car? Oh, the damage to the car? Well, what are the damages that resulted from the police using the car to do whatever maneuver we want to call it? Well, I think that Rex Wilson was probably afraid of losing his life and caused him mental anguish, apprehension. I don't know of a victim that would ever feel good and comfortable about losing his life. There's damage psychologically and physically. It ended his life. That's damages. And also life has value. But counsel, he wasn't killed by the car hitting the other car. Specifically to that point, is there evidence of damage to Mr. Wilson personally that was caused specifically by Squio's car hitting his car? I'm not aware of damages there. I suppose if it went to a jury trial, then there would be evidence of that. But since it was done summarily adjudication, that never was allowed to be brought up in a trial. But it was the ramming that led up to the shooting. Yeah, ramming. I guess they tried to change the story and say it's a blocking. There was four minutes on the radio that I didn't see in a brief either. I didn't know that. But the sworn testimony by Golan said ram. It seemed like that would be better evidence. Something came on over the radio. Can I just ask one more question? Because I think your time is over. You have not argued that it was the ramming or the blocking or the pinching that caused the death? I wasn't the counsel on lower court. I'm looking at the record. As far as you can tell, that was not argued. I'm just going by the record, and Golan said ram it. And so there's damage to the car there showing impact. I don't think that was necessary. They could have just parked like the other cars without hitting that vehicle because it's blocked. It was a blocking, but they said it was a ramming. So, you know, I think that we need to look at it. It's unreasonable regardless under tort law, and that's what we're looking at here. It was unreasonable under the reasonable standard. But I also want to add that ‑‑ I'm sorry. We've given you more than two minutes extra, so I think I need to cut you off there. Thank you, both sides, for the helpful arguments. This case is submitted. I appreciate it. Thank you. Thank you. All rise.
judges: SCHROEDER, GRABER, FRIEDLAND